**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
<u>**(Baltimore Division)**</u>

| | | |
|---|---|---|
| In re: | * | **Case No.: 23-14023-NVA** |
| **CHARLES & 20, LLC,** | | **(Chapter 11)** |
| | * | |
| Debtor | | |
| | * | |
| In re: | | **Case No.: 23-14024-NVA** |
| **16 EAST 20, LLC** | * | **(Chapter 11)** |
| | | |
| Debtor | * | |
| | | **Jointly Administered Under** |
| | * | **Case No. : 23-14023-NVA** |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

<u>**DISCLOSURE STATEMENT FOR JOINT CHAPTER 11 PLAN**</u>

**I.**     <u>**Introduction**</u>

Charles & 20, LLC and 16 East 20, LLC (the "Debtors"), Debtors and Debtors-in-Possession, by their undersigned attorneys, pursuant to the provisions of Chapter 11 of Title 11 of the United States Code, file this Disclosure Statement to disclose the information believed to be material for creditors to arrive at a reasonably informed decision and to exercise the right to vote on acceptance of the Joint Chapter 11 Plan (the "<u>Plan</u>") filed by the Debtors with the United States Bankruptcy Court for the District of Maryland on **September 6, 2023**.

**NO REPRESENTATIONS CONCERNING THE DEBTORS (PARTICULARLY AS TO THE VALUE OF ITS ASSETS) ARE AUTHORIZED, OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT. ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE ACCEPTANCE OF THE PLAN THAT ARE NOT CONTAINED IN THIS DISCLOSURE STATEMENT SHOULD NOT BE RELIED**

UPON BY ANY CREDITOR AND SHOULD BE REPORTED TO UNDERSIGNED COUNSEL FOR THE DEBTOR. MUCH OF THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS NOT BEEN SUBJECT TO A CERTIFIED AUDIT. THE RECORDS KEPT BY THE DEBTORS ARE NOT WARRANTED OR REPRESENTED TO BE WITHOUT ANY INACCURACY, ALTHOUGH GREAT EFFORT HAS BEEN MADE TO ENSURE THAT ALL RECORDS ARE ACCURATE.

II.     **History and Background of the Debtors**

A.      **Charles & 20, LLC**

Charles & 20, LLC is a Maryland limited liability company which owns (i) a commercial office building and (ii) a parking lot, situated upon separate parcels of real property, together commonly known as 4 E. North Avenue, Baltimore, Maryland. The property does not currently generate any revenue. Charles & 20, LLC was declared to be in default of the secured loan against its property and, thereafter, subject to foreclosure proceedings. Following unsuccessful negotiations to reinstate or resolve the loan, Charles & 20, LLC was forced to commence this proceeding. As set forth in the Proof of Claim filed by Yellow Breeches Capital, LLC (the "Lender"), in the Claim Registry as Claim No. 2, the Lender asserts a secured claim against Charles & 20, LLC as of the Petition Date in the amount of $2,758,188.29.

B.      **16  East 20, LLC**

16 East 20, LLC is a Maryland limited liability company which owns four (4) separate parcels of real property in Baltimore City, Maryland, which are generally described as street level parking lots at the addresses: 11-15 East 21st Street, 26 East 20th Street, and 16 East 20th Street. 10. The lots are rented to local businesses who use the parking spaces to operate and/or provide parking for employees and customers, On average, the incoming rents from the parking

lots total $8,500 per month.  The only regular expenses are taxes and insurance. 16 East 20, LLC is subject to the same secured debt as Charles & 20, LLC.  Specifically, as set forth in the Proof of Claim filed by the Lender, in the Claim Registry as Claim No. 2, the Lender asserts a secured claim against 16 East 20, LLC as of the Petition Date in the amount of $2,758,188.29.

### C.    The Bankruptcy Cases

The Debtors each filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on June 8, 2023 (the "Petition Date") to obtain relief from the foreclosure and receivership efforts on the Lender in the Circuit Court for Baltimore City.

The Debtors' cases are being jointly administered pursuant to the Orders entered in each case on August 30, 2023.

The Debtors have retained, with court approval, Tydings & Rosenberg LLP ("T&R") as their general bankruptcy counsel.

The Debtors' applications to approve the employment of their accountant are pending.

Contemporaneously with the filing of the Debtors' Plan, Charles & 20, LLC is filing applications to employ a real estate broker and a marketing agent, for the purposes of expeditious sale of the real property of Charles & 20, LLC pursuant to the terms of the Plan.

The Lender is the sole secured creditor of the Debtors other than real estate taxes owed on the Debtors' real properties.  There is no meaningful unsecured debt.

### III.    **The Plan of Reorganization**

**SET FORTH BELOW IS A BRIEF SUMMARY OF THE PLAN.  THE SUMMARY SHOULD NOT BE RELIED UPON FOR VOTING PURPOSES. CREDITORS ARE URGED TO READ THE ENTIRE PLAN AND TO CONSULT WITH COUNSEL OR EACH OTHER TO FULLY UNDERSTAND THE PLAN.  A COPY OF**

6003510.1

THE PLAN HAS BEEN FILED WITH THE CLERK, UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF MARYLAND, U.S. COURTHOUSE, 101 W. LOMBARD STREET, BALTIMORE, MARYLAND 21202, AND IS AVAILABLE FOR INSPECTION AND REVIEW.

THE PLAN IS COMPLEX AND REPRESENTS A PROPOSED LEGALLY BINDING AGREEMENT.  AN INFORMED JUDGMENT CONCERNING THE PLAN, THEREFORE, CANNOT BE MADE WITHOUT READING AND UNDERSTANDING IT.

A.      <u>Definitions and Classes</u>

**The Plan, in Article 1, provides the following definitions**:

1.1      "Administrative Bar Date" means forty-five (45) days after the Effective Date and is the date by which applications for allowance of Administrative Expense Claims incurred through the Confirmation Date must be filed with the Court or be forever barred and discharged. Notice of confirmation of the Plan shall be deemed sufficient and adequate notice of the Administrative Bar Date.

1.2      "Administrative Expense(s)" means a Claim for costs and expenses  of administration of the Chapter 11 case allowed under section 503(b) or, if applicable, 1114(e)(2) of the Bankruptcy Code, including: (a) any actual and necessary costs and expenses incurred after the Petition Date of preserving the Debtors' Estates and operating the businesses of the Debtors (such as wages, salaries, commissions for services and payments for inventories, lease equipment and premises) and Claims of governmental units for taxes (including Claims related to taxes which accrued after the Petition Date, but excluding Claims related to taxes which accrued on or before the Petition Date); (b) compensation for legal, financial, advisory,

accounting and other services and reimbursement of expenses allowed by the Bankruptcy Court under sections 330, 331 or 503(b) of the Bankruptcy Code to the extent incurred prior to the Effective Date; and (c) all fees and charges assessed against the Debtor's Estate under 28 U.S.C. §1930.

    1.3    "Allowed Claim(s)" means any Claim:

    (a)    in respect of which a proof of claim has been filed with the Bankruptcy Court within the applicable period of limitations fixed by Bankruptcy Rule 3003; or

    (b)    which is listed in Schedules D, E or F filed by Debtors with the Court, including any amendments thereto, and is not listed as disputed, contingent, or unliquidated as to amount; or

    (c)    for which an application has been filed pursuant to sections 329 and 330 of the Bankruptcy Code;

and further, as to any such claim, (i) either no objection to the allowance thereof has been filed, or if an objection to the allowance thereof has been filed, the objection has been overruled or the amount of such claim fixed by a Final Order; or (ii) such claim has not been paid, settled, waived or withdrawn.

    1.4    "Bankruptcy Code" means Title 11 of the United States Code ("U.S.C.") as enacted by the Bankruptcy Reform Act of 1978, Public Law No. 95-598 and subsequently amended, and such portions of Title 28 of the United States Code as are applicable to bankruptcy cases.

1.5     "Bankruptcy Court" means the United States Bankruptcy Court for the District of Maryland.

1.6     "Bankruptcy Rules" means (a) the Federal Rules of Bankruptcy Procedure, and (b) the Local Bankruptcy Rules for the United States Bankruptcy Court for the District of Maryland, both as now in effect or hereafter amended.

1.7     "Causes of Action" means any action, claim, cause of action, controversy, demand, right, action, lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license and franchise of any kind or character whatsoever, known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law, including but not limited to any action to recover any transfer that may be avoided under any provision of the Bankruptcy Code including, but not limited to, sections 544, 547, 548 or 549; or any action, cause of action, claim, power, right and/or and remedy arising under sections 544, 545, 546, 547, 548, 549, 550, 553 or 558 of the Bankruptcy Code.  Causes of Action also include: (a) any right of setoff, counterclaim or recoupment and any claim for breaches of duties imposed by law or in equity; (b) the right to object to Claims or Interests; (c) any claim pursuant to sections 362 or chapter 5 of the Bankruptcy Code; (d) any claim or defense including fraud, mistake, duress and usury and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any state law fraudulent transfer claim.

1.8    "Claim(s)" means any claim against the Estates or as defined in § 101(5) of the Bankruptcy Code, including, but not limited to, all claims arising from the rejection of unexpired leases and/or executory contracts.

1.9    "Claims Bar Deadline" means October 3, 2023 for all creditors except for a governmental unit and December 5, 2023 for a governmental unit.

1.10    "Claim Objection Deadline" means the date that occurs ninety (90) days following the Effective Date.

1.11    "Confirmation Date" means the date on which the Court enters the Confirmation Order.

1.12    "Confirmation Order" means the order of the Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

1.13    "Disputed Claim(s)" means any Claim or a portion of any Claim as to which the Debtor(s), or any other party in interest has filed an objection or motion to estimate claim in accordance with the Bankruptcy Code and the Bankruptcy Rules, which objection has not been withdrawn or adjudicated pursuant to a Final Order.

1.14    "Effective Date" means the day after the Confirmation Order becomes final by expiration of the time for appeal therefrom.

1.15    "Estate(s)" means the bankruptcy estate(s) created pursuant to section 541 of the Bankruptcy Code upon commencement of the Debtors' bankruptcy cases.

1.16    "Final Order" means an order that has not been reversed, stayed, modified or amended and the time to appeal from or to seek review of or rehearing on such order has expired, and which order has become final.

1.17    "Petition Date" means June 8, 2023.

1.18    "Plan" means the Debtors' Joint Chapter 11 Plan, or as hereafter amended or modified.

1.19    "Professional Person(s)" means an attorney, accountant, appraiser, consultant or other professional retained or to be compensated pursuant to an order of the Court entered under sections 327, 328, 330, 503(b), or 1103 of the Bankruptcy Code.

1.20    "Proof of Claim" means a proof of claim filed pursuant to section 501 of the Bankruptcy Code and Part III of the Bankruptcy Rules.

1.21    "Schedules" means the schedules of assets and liabilities and statement of financial affairs filed by the Debtors with the Bankruptcy Court in accordance with section 521(1) of the Bankruptcy Code and Rule 1007 of the Bankruptcy Rules, and any amendments thereto.

1.22    "Secured" shall be consistent with section 506 of the Bankruptcy Code, and shall mean an allowed claim in an amount equal to the present value of the applicable creditor's interest in the Debtors' interest in the property, or in the amount subject to setoff, as may be established by this Plan, the Confirmation Order, or separate Order of the Court.  Debtors reserve their rights to challenge whether a claim is fully secured or secured at all.

1.23    "Yellow Breeches" means the Debtors' Secured creditor, Yellow Breeches Capital LLC, that has filed Proof of Claim No. 2 in each of the Debtors' cases.

**The Plan, in Articles 2 and 3, classifies and treats claims as follows**:

Class 1.   Class 1 consists of (i) Allowed Claims for costs and expenses of administration of the Estate, as defined above as Administrative Expenses, including fees of Professional Persons approved by the Court and other post-petition operating expenses and (ii) fees payable to the United States Trustee by the Debtors under 28 U.S.C. § 1930(a)(6).

6003510.1

8

**Treatment:** The Debtors shall pay each Class 1 allowed claim in full, in cash, on the latest of (a) the Effective Date, (b) the thirtieth (30th) day after such claim has become an Allowed Claim, or (c) a date agreed upon by the Debtors and the particular claimant. Class 1 is not a class of claims impaired under the Plan.

Class 2.  Class 2 consists of all Allowed Claims that are entitled to priority under section 507 of the Bankruptcy Code excluding 11 U.S.C. § 507(a)(2) administrative claims and § 507(a)(8) unsecured tax claims.

**Treatment:**  While the Debtors do not believe that there are any claims in Class 2, to the extent that the Court determines otherwise, the Debtors shall pay each Class 2 allowed claim in full, in cash, on the latest of (a) the Effective Date, (b) the thirtieth (30th) day after such claim has become an Allowed Claim, or (c) a date agreed upon by the Debtors and the particular claimant. Class 2 is not a class of claims impaired under the Plan.

Class 3. Class 3 consists of all Allowed Claims for unsecured taxes of government units entitled to priority under section 507(a)(8).

**Treatment**:  While the Debtors do not believe that there are any claims in Class 3, to the extent that the Court determines otherwise, the Debtors shall pay each Class 3 allowed claim in full, in cash, on the latest of (a) the Effective Date, (b) the thirtieth (30th) day after such claim has become an Allowed Claim, or (c) a date agreed upon by the Debtors and the particular claimant. Class 2 is not a class of claims impaired under the Plan.

Class 4.  Class 4 consists of the Secured claims of unpaid real property taxes.

**Treatment**:  The Debtors shall pay the Class 4 allowed claims in full upon the sale or refinance of the Debtors' respective real properties subject to such claims.  Class 4 is a class of claims impaired under the Plan.

6003510.1

Class 5.   Class 5 consists of the Secured claims of Yellow Breeches against the assets of Charles & 20, LLC..

**Treatment**:   The Class 5 allowed Secured claims shall be satisfied by the sale of the real properties of Charles & 20, LLC, subject to the following deadlines: (a) an executed contract of sale shall be procured within ninety (90) days of the Effective Date; and (b) Closing on any contract of sale shall occur within sixty (60) days of the date of execution of such contact of sale. In the event that the Class 5 allowed Secured claims are not paid in accordance with the terms above, including the Debtors' compliance with the deadlines, the Debtors shall surrender the real properties of Charles & 20, LLC and the automatic stay shall be terminated effective immediately upon the filing with the Court of a Notice of Termination by Yellow Breeches. Class 5 is a class of claims impaired under the Plan.

Class 6. Class 6 consists of the Secured claims of Yellow Breeches against the assets of 16 East 20, LLC.

**Treatment:**  The Class 6 allowed Secured claims shall be satisfied by payment no later than 180 days after the Effective Date of the lesser amount of (i) the balance of the Class 6 allowed Secured claims (after any satisfaction of the claims by the satisfaction of Class 5 claims) or (ii) Two Hundred Fifty Thousand Dollars ($250,000.00).  In the event that the Class 6 allowed Secured claims are not paid in accordance with the terms above, the Debtors shall surrender the real properties of 16 East 20, LLC and the automatic stay shall be terminated effective immediately upon the filing with the Court of a Notice of Termination by Yellow Breeches. Class 6 is a class of claims impaired under the Plan.

Class 7. Class 7 is comprised of all general unsecured claims, including the unsecured, deficiency portions of the claims of Yellow Breeches.

6003510.1

**Treatment:** Class 7 claims shall be paid pro rata from any remaining cash of the Debtors no later than one (1) year after the Effective Date. Class 7 is a class of claims impaired under the Plan.

### B.    Plan Execution

The Plan, in Article 4, provides the means for execution as follows:

<u>Funding of Plan</u>. The funds necessary to implement the Plan shall be generated primarily from the sale or refinance of the Debtors' assets, and the interim cash flow of 16 East 20, LLC.

<u>Retained Duties, Rights and Powers of the Debtor</u>. Upon confirmation of the Plan, the Debtors shall retain all of their rights and powers under the Bankruptcy Code, including, but not limited to, the right to prosecute all Causes of Action and all other causes of actions and all other rights and powers under §§ 505, 506, 541, 542, 543, 544, 547, 548, 549, 550, and 553 of the Bankruptcy Code. Furthermore, from and after the Effective Date the Debtors shall retain the authority for (i) enforcing and prosecuting claims, interests, rights and privileges of the Debtors' Estates, including, without limitation, Causes of Action; (ii) resolving Disputed Claims; and (iii) confirming and administering the Plan and taking such actions as are necessary to effectuate the Plan.

The Debtors shall have the exclusive right, power and authority, but not the obligation, among other things, to: (a) object to any Claim; (b) file suit or commence an action or proceeding with respect to any claim or cause of action of the Debtors and/or the Estates, and otherwise prosecute, settle, compromise or pursue such claim or cause of action; (c) retain and employ professionals as it deems necessary or appropriate to carry out the terms and purposes of the Plan and on such terms as the Debtors deem reasonable; (d) execute and enter into contracts on behalf of the Estates as the Debtors deem necessary or appropriate to carry out the terms and

6003510.1

11

purposes of the Plan and on such terms as the Debtors deem reasonable; (e) distribute funds to holders of allowed Claims consistent with the terms of the Plan; (f) file a final report and move to close the Debtors' Chapter 11 cases; and (g) to take such other and further actions as may be necessary or appropriate to carry out the terms and purposes of the Plan.

Special Tax Provision.  Pursuant to § 1146 of the Bankruptcy Code, the issuance, transfer or exchange of any notes or equity securities under the Plan, sales of the Debtors' assets, the creation of any mortgage, deed of trust or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, any merger agreements or agreements of consolidation, deeds, bills of sale or assignments executed in connection with any of the transactions contemplated under the Plan, shall not be subject to any stamp, real estate transfer, recapture, mortgage recording or other similar tax.

Resolution of Disputed Claims. To the extent a Claim is a Disputed Claim, the Debtors shall not be required to pay the applicable disputed portion of a payment to the holder of the Disputed Claim that would otherwise be payable with respect to the Disputed Claim.  In the event that the Disputed Claim is allowed, the Debtors shall thereafter pay the appropriate amount to the holder of such Claim in accordance with the terms of the Plan and in the same manner as any other creditor of the same Class.

Distributions.  The Debtors may stop payment on any distribution check that has not cleared the issuing bank within ninety (90) days of the date of distribution of such check.  All unclaimed funds or property may be used to satisfy any additional expenses or fees, or if none exist and all classes have been paid in full, shall revert to the bank accounts maintained by the Debtors.  Distributions to holders of Allowed Claims shall be made at the address of each such

6003510.1

holder as determined in accordance with the proof of claim filed by the respective claimholder, or if no proof of claim is filed, in accordance with the Schedules. If any holder's distribution is returned as undeliverable, no further distributions to such holder shall be made unless and until the Debtors become aware of such holder's then current address, at which time all missed distributions shall be made to such holder, without interest, from the date of the first attempted distribution. All unclaimed distributions shall be used to satisfy the costs of administering and fully consummating this Plan and the holder of any such claim or interest shall not be entitled to any other further distribution under this Plan on account of such claim or interest.

C.    **Executory Contracts and Unexpired Leases**

The Plan, in Article 5, contains the following provisions concerning the treatment of executory contracts and unexpired leases:

Assumption of Remaining Leases and Contracts. Unless otherwise assumed or rejected by separate Court order, on the Effective Date, except as otherwise provided herein, or in any contract, instrument, release, indenture or other agreement or document entered into in connection with the Plan, executory contracts and unexpired leases shall be deemed rejected, with the effective date of assumption being the Effective Date or such date determined by the Bankruptcy Court, unless such executory contract or unexpired lease: (i) was assumed, assumed and assigned, or rejected previously; (ii) previously expired or terminated pursuant to its own terms; or (iii) is the subject of a motion to assume or assume and assign filed on or before the Effective Date. The entry of the Confirmation Order shall constitute a Bankruptcy Court order approving the assumptions or rejections of such executory contracts or unexpired leases as set forth in the Plan, pursuant to sections 365(a) and § 1123 of the Bankruptcy Code. Any motions to assume or assume and assign executory contracts or unexpired leases pending on the Effective

Date shall be subject to approval by the Bankruptcy Court on or after the Effective Date by a final order, including the Confirmation Order.

Rejection Claims.  Pursuant to Bankruptcy Rule 3002(c)(4), and except as otherwise ordered by the Court, claims arising from the rejection of an executory contract or unexpired lease shall be filed, by way of motion, with the Court no later than thirty (30) days after the later of the entry of a Final Order approving such rejection and the confirmation of the Plan, or such claim shall be forever barred.  Any claim arising from the rejection of an executory contract or unexpired lease shall be deemed a Class 7 Claim for distribution purposes as of the date of the entry of an order of the Court approving said claim.

### D.    Plan Modification

The Plan, in Article 6, contains the following provisions regarding Plan modification:

Pre-Confirmation Modification.  The Debtors reserve the right, in accordance with the Bankruptcy Code, to amend or modify the Plan or the treatment of any claim prior to the Confirmation Date.

Post-Confirmation Modification.  After the Confirmation Date, the Debtors may amend or modify the Plan, or any portion thereof, in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission, or reconcile any inconsistency in the Plan, in such a manner as may be necessary to carry out the purpose and intent of the Plan.

### E.    Retention of Jurisdiction Provisions

The Plan, in Article 8, contains the following provisions regarding jurisdiction:

Retention of Jurisdiction.  Notwithstanding the Confirmation of the Plan, the Court will retain jurisdiction until consummation of the Plan to ensure that the purposes and intent of the Plan are carried out.  The Court's jurisdiction shall be over any and all disputes and litigation

6003510.1

pending at the time of the confirmation of the Plan, any controversies that may arise thereafter, and any controversies that may affect the ability of the Debtors to effectuate the consummation of the Plan.  By way of illustration of the jurisdiction retained by the Court, but not by way of limitation of the same, the Court shall retain jurisdiction in this case, among other things, for the following purposes:

(a)     The classification of the claim of any creditor and the re-examination of claims which have been allowed for purposes of voting, and the determination of such objections as may be filed to the claims of creditors.  The failure by the Debtors to object, or to examine any claim for purposes of voting, shall not be deemed to be a waiver of the right to object to or re-examine any claim in whole or in part.

(b)     Except to the extent that the Debtors choose to invoke the jurisdiction of a state court, the determination of all causes of action, controversies, disputes and conflicts involving, or relating to, the Debtors or their assets, arising prior to or after the Confirmation Date, whether or not subject to an action pending as of the Confirmation Date, between the Debtors, and any other party or parties, including but not limited to, any right of the Debtors to recover assets pursuant to applicable provisions of the Bankruptcy Code.

(c)     The modification of this Plan after confirmation to correct any defect, to cure any omission, or to reconcile any inconsistency in this Plan or in the Order of Confirmation, as may be necessary or otherwise appropriate to carry out and/or clarify the intended purposes of the Plan or the Order of Confirmation.

(d)     The allowance of compensation for professional services rendered to the Estate by professionals of the Debtors through the Confirmation Date pursuant to section 330(a) of the Bankruptcy Code, upon application for such compensation.

(e)      The enforcement and interpretation of the terms and conditions of this Plan, including any agreement for satisfaction of an Allowed Claim.

(f)     The determination of the existence of any liens, encumbrances, or interests of other parties in property of the Estates or the Debtors, and the extent and priority thereof.

(g)     The enforcement of, and the continuation of, the automatic stay and any similar equitable relief with respect to post-confirmation actions against the Debtors, the Estates, and/or property of the Estates.

(h)     The resolution of any disputes regarding implementation of the Plan.

(i)     Entry of an order concluding and terminating the case.

Payment as Release.  The tender of full payment to the holder of an Allowed Claim in any class as provided for under this Plan shall be deemed to effect a settlement, release, and discharge of the Debtors and their property by such holder on behalf of itself, successors and assigns.

Extension of Dates.  If any date or deadline under this Plan falls on a Saturday, Sunday, or legal holiday, the date or deadline shall be deemed to occur on the next business day thereafter, unless otherwise provided herein.

Rules of Construction.  Except as otherwise provided herein, this Plan shall be construed in conformance with the rules of construction in § 102 of the Bankruptcy Code.  Except to the extent the Bankruptcy Code, Bankruptcy Rules or other federal law is applicable, or to the extent an exhibit to the Plan provides otherwise, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Maryland, without giving effect to the principles of conflicts of law of such jurisdiction.

Addresses for Notices.  In the event a party is required to give notice to the Debtors under this Plan, such notice shall be in writing, shall reference the above-referenced case numbers, and shall be sent by commercially reasonable means under the circumstances to the following:

Joseph M. Selba, Esq.
Tydings & Rosenberg LLP
1 East Pratt Street, Suite 901
Baltimore, MD 21202
Fax: 410-727-5460
Email:  jselba@tydings.com

6003510.1

Section 1129(b) Election.  In order to confirm the Plan, and to the extent necessary, the Debtors invoke the entitlement of section 1129(b) of the Bankruptcy Code, such that, as long as the Plan does not discriminate unfairly, and is fair and equitable, with respect to any Class of Claims that is impaired under and has not accepted the Plan, the Plan may be confirmed by the Court.

Statutory Fees.  All fees payable pursuant to Chapter 123 of Title 28, United States Code, as determined by the Court on the Confirmation Date, shall be payable on the Effective Date. Any statutory fees accruing after the Effective Date shall constitute Administrative Expenses.

Deadline for Filing Administrative Expense Claims.  Notwithstanding section 503(a) of the Bankruptcy Code, any person or entity seeking the allowance or payment of an Administrative Expense Claim under section 503 of the Bankruptcy Code and/or any Professional Person or firm retained with approval by order of the Court seeking compensation in this Chapter 11 case pursuant to sections 330 or 503(b) of the Bankruptcy Code, shall be required to file on or before the Administrative Bar Date an application for the allowance and/or payment of an Administrative Expense Claim including, without limitation, an application for the final compensation of a Professional Person and reimbursement of expenses.  Any such Administrative Expense Claim not filed by the Administrative Bar Date shall be forever barred and discharged.  Objections to any such application shall be filed on or before a date to be set by the Court.

Actions on Claims.  After the Confirmation Date, unless otherwise ordered by the Court after notice and a hearing, the Debtors shall have the sole and exclusive right to make and file objections to claims and shall serve a copy of each objection upon the holder of such claim to which the objection is made.  Objections to claims shall be filed by the Claim Objection

6003510.1

17

Deadline.   The Debtors shall retain the discretion to litigate such objection to a final determination in the Court or to elect to compromise, settle, or otherwise resolve any such objection subject to approval thereof by the Court. The Debtors may, at any time, request that the Court estimate any Disputed Claim pursuant to § 502(c) of the Bankruptcy Code regardless of whether there is a previous objection to such claim, and the Court will retain jurisdiction to estimate any such claims at any time.  On or after the Confirmation Date, any claims which have been estimated may subsequently be compromised, settled, withdrawn or otherwise resolved subject to approval by the Court. If, on or after the Effective Date, any Disputed Claim is allowed, the Debtors shall include the claim in the next distribution to creditors in that particular class of claims, and any distribution thereafter until the claim has been paid in accordance with all other claims in that class.

Closing of Case.  When all Disputed Claims filed against the Debtors have become Allowed Claims or have been disallowed by Final Order, and the Debtors have determined that all causes of action have been fully and finally resolved, the Debtors may seek authority from the Bankruptcy Court to close their cases and seek a final decree in accordance with the Bankruptcy Code and the Bankruptcy Rules.

Invalidity of Plan Provisions. Should any provision of this Plan be determined to be invalid, void or unenforceable, such determination shall not in any way limit or affect the enforceability and operative effect of any or all other provisions of the Plan and the Court shall, with the consent of the Debtors, have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding,

alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and in no way shall be affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in according with the foregoing, is valid and enforceable pursuant to its terms.

## IV.    Voting On The Plan And Confirmation

Voting on acceptance or rejection of the Plan will be governed by the provisions of the Bankruptcy Code.  Each voting creditor will be supplied with an official ballot, in a form prescribed by the Court.  Creditors may vote to accept or reject the Plan by returning a completed ballot to the undersigned counsel for the Debtors as instructed on the ballot.  A class of creditors will be considered to have accepted the Plan (a) if it is accepted by creditors holding at least two-thirds (2/3) in amount, and more than one-half (1/2) in number of the allowed claims of each class that has voted, or (b) if the class is unimpaired within the meaning of the Bankruptcy Code.

After the time for voting on the Plan passes, the Court will hold a hearing and rule on confirmation of the Plan in accordance with the Bankruptcy Code.  If all requirements for confirmation of the Plan under the Bankruptcy Code are satisfied, except that the Plan is not accepted by one or more classes of creditors, the Court may confirm the Plan without the acceptance of creditors if the Court finds that the Plan does not discriminate unfairly, and is fair and equitable (within the meaning of the Bankruptcy Code) with respect to any class of creditors that does not accept the Plan.

Dated:  September 6, 2023                    /s/ Joseph M. Selba
                                             Joseph M. Selba, Bar No. 29181
                                             Tydings & Rosenberg LLP
                                             1 East Pratt Street, Suite 901

6003510.1

19

Baltimore, Maryland  21202
jselba@tydings.com
(410) 752-9753
*Counsel for the Debtors*